## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

UNITED STATES OF AMERICA    )
                                       )
                                       )
v.                                      )         Criminal No. 3:11-00082-03
                                       )                     & 
                                       )         Criminal No. 3:11-00082-06
                                       )         Judge Trauger
                                       )
[3] FRANK DWAYNE RANDOLPH    )
                                       )
[6] CHANNIN ACE RANDOLPH     )
                                       )
                    Defendants     )

## MEMORANDUM AND ORDER CONCERNING RETURN OF PROPERTY

For the reasons stated herein, the United States is ordered to release the assets at issue to

counsel for Frank Randolph ("Frank"), who shall hold them in trust pending restitution of the

court-appointed attorney's fees incurred on behalf of Frank and Channin Randolph ("Channin").

## BACKGROUND

On March 16, 2011, the United States filed a criminal complaint alleging that Frank,

Channin (Frank's son), and others conspired to distribute controlled substances in violation of

federal law. On March 22, 2011, state and federal agents seized, in relevant part, five bank

accounts in the name of both Frank and Channin, and one in the name of Frank only. The funds

in these accounts bear no relationship to Frank's or Channin's alleged crimes.

Pursuant to Fed. R. Crim. P. 41(g), Frank filed a motion for return of these accounts.

(Docket No. 377.) The government opposed, contending that the accounts were subject to

seizure, or that they should be retained by the government, at least until Frank and Channin paid

1

restitution of their court-appointed attorney's fees.  (Docket Nos. 382 and 397.)  The court

ordered the government to return the funds, but also ordered Frank to pay his court-appointed

attorney's fees.  (Docket No. 439.)  However, the court deferred judgment on whether Channin's

attorney's fees should also be paid from the accounts, pending an evidentiary hearing.  (*Id.*)  At

this hearing, the testimony of bank officials revealed that Channin had an interest in five of the

six accounts at issue.  (Docket No. 442.)  However, Channin was not present at the hearing, nor

had he filed any papers concerning the underlying motion.  Accordingly, the court ordered

Channin, Frank, and the government to file supplemental briefs clarifying their understanding of

Frank and Channin's respective interests in the funds.  (*Id.*; briefs at Docket Nos. 450-452, 454,

456.)

The supplemental briefs indicate that the issues in dispute are limited.  Frank has offered

to pay court-appointed fees incurred on his behalf and on Channin's behalf,[1] while Channin

consents to paying restitution if he has more than a survivorship interest in any of the accounts,

which both Frank and the government admit he does.[2]  The government concedes that Frank has

an ownership interest in four of the six accounts, but now contends that Frank has no ownership

interest in the remaining two. Accordingly, reserving its right to appeal the court's prior order,

the government continues to oppose return of these two accounts only.

The first of the two disputed accounts was originally opened by Frank in January 2003 as

---

[1]Frank has offered to have his counsel hold the accounts in trust until payments are made.

[2]Of the five accounts listed in the name of both Frank and Channin, the government does not dispute that Frank and Channin jointly own three of them.  Those three accounts collectively are worth approximately $23,000.00.

2

an individual savings account ("Savings Account").[3]  In February 2003, Frank changed the

account terms to "payable on death to Channin Randolph."  In February 2005, Frank designated

the account as transferable to his son Channin, who was then a minor, under the Uniform

Transfer to Minors Act ("UTMA"), Tenn. Code Ann. § 35-7-101 *et seq.* (2011), appointing

himself as custodian.  In January 2011, just weeks after Channin became 21 years old, Frank and

Channin signed an account signature card that re-designated the Savings Account as a joint

account with right of survivorship, with a term requiring dual signatures for future withdrawals.

Frank and Channin acknowledged that the information in the form was accurate.

The second disputed account is a UTMA certificate of deposit ("CD") that was opened

on March 21, 2011, titled Frank Randolph as Custodian for Channin Randolph.  As with the

Savings Account, in January 2011, Frank and Channin changed the terms of the CD to a joint

account with right of survivorship, required two signatures for all withdrawals, and certified the

form.

## ANALYSIS

The government argues that the two disputed accounts should not be returned to Frank

because: (1) he has no ownership interest in them; and (2) it would be against public policy to

return them to Frank.  In response, Frank argues that the government waived its right to contest

his ownership interest, and that, regardless, he is in fact a joint owner of these accounts.

### I.     Waiver

After Frank filed his motion to return property, the government filed an initial response

---

[3]Unless otherwise noted, information concerning these two disputed funds is drawn from the testimony of Bank of Frankewing executive vice president Jeff Stewart (Docket No. 452, Ex. 1), and/or bank records that the government filed with the court (Docket No. 452, Exs. 2 and 3.)

3

on September 20, 2011, and then, by leave of court, a supplemental response on September 28, 2011. The government did not contest Frank's ownership interest in the accounts in either brief. Accordingly, after rejecting the government's arguments, the court granted Frank's motion and ordered that the property be returned to him. The court also ordered supplemental briefing to clarify Channin's interest in the accounts, not to permit the government to re-litigate the motion it had just lost. Nevertheless, to resolve whether Channin must also pay restitution for his court-appointed fees, the court must determine Frank and Channin's respective ownership interests.

## II.  Property Interests in the Two Disputed Accounts

If the evidence indicates that Frank retains a property interest in the two disputed accounts, he is lawfully entitled to their return. *See Sovereign News Co. v. U.S.*, 690 F.2d 569, 577 (6th Cir. 1982). Frank has made the requisite showing. Although the government is correct that designation of the Savings Account and CD as custodial property under the UTMA indeafesibly vested title in Channin before the January 2011 transactions,[4] its two arguments that the January 2011 transactions did not vest any ownership interest in Frank are unpersuasive.

First, the government argues that the January 2011 transactions were ineffective, contending that the bank signature cards do not indicate Channin's intent to transfer ownership.

_____

[4]Under the UTMA, an adult may designate that a particular account is being held in custody for a minor. The designation is "irrevocable, and the custodial property is defeasibly vested in the minor." Tenn. Code Ann. § 35-7-112(b). When the minor reaches age 21, the custodian "shall transfer in an appropriate manner the custodial property to the minor." *Id.* at § 121(a)(1). However, failure of a custodian to comply with UTMA provisions concerning possession and control of designated funds does not affect the validity of the transfer. *Id.* at § 112(a)(1). Thus, when Frank designated the Savings Account and CD as UTMA funds, title to those funds indefeasibly vested in Channin, and Channin had access to the funds when he reached the age of majority before (January 2011). Accordingly, in January 2011, when Channin and Frank signed the bank signature cards transferring the funds into joint accounts with rights of survivorship, Channin was the sole owner of the funds that were contributed.

4

However, the bank form for the January 2011 Savings Account and CD designations each contain a section entitled "Ownership of Account - Personal Purpose," in which the box for "JOINT - WITH SURVIVORSHIP," is checked. (Docket No. 452, Ex. 2 at p. 2, Ex. 3 at p. 2.) Both Frank and Channin certified the signature cards at the time, and they do not contest their validity now. Thus, the court finds that, as reflected in the bank records, Frank and Channin are joint owners of the Savings Account and CD, with right of survivorship.

Second, somewhat paradoxically, the government argues that, even if Frank and Channin are joint owners of the Savings Account and CD, Frank has no ownership interest in these funds. In support of this argument, the government chiefly relies on *Leffew v. Mayes*, 685 S.W. 2d 288 (Tenn. Ct. App. 1983), which involved peculiar circumstances that are plainly not present here. There, the court found that, where joint tenants had brought suit against each other during their lifetimes to establish their respective interests in jointly owned funds, the lower court was obligated to determine their proportionate ownership interests, even though one claimant had died while the suit was pending. *Id.* at 292. Under these particular circumstances, the appellate court found that, during the lifetime of the joint tenants, the funds deposited in the accounts were held in divisible parts according to each owner's *pro rata* contribution. *Id.* at 291.

Here, the government contends that, because the funds used to create the joint Savings Account and CD were originally owned by Channin, *Leffew* dictates that the court must find that Frank has a 0% ownership interest in these accounts. In support of this argument, it contends that Frank and Channin are engaged in a "dispute" concerning ownership of the funds, tantamount to the lawsuit between joint owners at issue in *Leffew*. Although Frank and Channin appear to have had different understandings about the nature of their respective interests in the

5

Savings Account and CD, neither has challenged the validity of the January 2011 transactions. Furthermore, the fact that Channin did not join in the motion to return property and/or file an administrative claim for the property does not establish the existence of a "dispute" between Frank and Channin, particularly where Channin states that he has not claimed the funds simply because he did not realize he had a present interest in them. Accordingly, Frank and Channin are not adverse litigants and, therefore, *Leffew* is inapplicable. Thus, the court finds that Frank and Channin each have a present ownership interest in the Savings Account and CD.

### III. Public Policy

The government contends that, even if Frank has a present ownership interest in the Savings Account and CD, the court should not return them to Frank as a matter of public policy. To the extent the court follows the argument, the government contends that Frank has exercised "dominion and control" over the funds, switching the accounts to a UTMA designation to avoid paying certain taxes, then switching them to joint ownership when Channin turned 21. The government asserts that "it would violate public policy to return these monies to Frank Randolph, and thereby allow Channin Randolph to be used as a financial tool for his father's benefit and to further a fraud." (Docket No. 450 at p. 12.) However, the government does not articulate how the account designation changes amounted to "fraud," nor has it cited any applicable legal authority supporting its position. Furthermore, the government does not explain how, even taking its unsupported speculation as true, it may refuse to return the Savings Account and CD on that basis alone, where federal law otherwise requires their return. The Savings Account and CD – along with the other four accounts at issue – must be returned immediately.

### IV. Attorney's Fees

6

Frank has already consented to pay his court-appointed attorney's fees. Restitution of these fees will be paid first from the one account held in his name only, then, to the extent necessary, from one or more of the joint accounts.

Channin also had an ownership interest in five of the six accounts when he received court-appointed counsel and, therefore, he also must pay restitution. From the record, it appears that Channin did not understand the extent of his property interest in the joint accounts, believing that he only had a future interest – a right of survivorship – in these assets. However, the court has now determined that Channin in fact had a joint ownership interest in about $123,000.00 when the assets were seized. Given his youth and the particular circumstances presented here, Channin's failure to disclose these assets earlier is excusable. At one point, it looked as though Channin was going to enter a plea in this case, in which circumstance it made little sense to require him to retain new counsel. However, if he elects, instead, to proceed to trial, the court will require him to retain counsel. Accordingly, court-appointed counsel may continue to represent Channin until it is clear what course he will pursue, but his obligation to pay restitution will continue to accrue.

## CONCLUSION

The government is **ORDERED** to return all six accounts to counsel for Frank, who will hold the accounts in trust pending payment of restitution consistent with this opinion. Court-appointed counsel for Frank is **ORDERED** to submit a declaration by December 2, 2011, accounting for his fees and expenses to date, supported by time records and other supporting

evidence.[5]  Within 14 days of receiving notice from the court concerning the appropriate amount

of restitution, Frank's counsel will oversee payments from the accounts to the Clerk of Court to

reimburse for court-appointed legal fees and expenses.

The Clerk shall send a copy of this order to Frank's previous court-appointed counsel

(James Simmons).

Enter this day of November 18, 2011.

ALETA A. TRAUGER
United States District Judge

---

[5]Court-appointed counsel for Channin shall be ordered to submit a similar accounting by
subsequent order.  Counsel for Frank shall not distribute the remaining funds until Channin's
ongoing representation is resolved.